**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**LOREN MITCHELL**
**MASTER IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

Final Report: April 28, 2023
Date Submitted: February 21, 2023

Timothy S. Ferry, Esquire
Ferry Joseph, P.A.
1521 Concord Pike, Suite 202
Wilmington, DE 19803

Charles J. Durante, Esquire
Regina S. Schoenberg, Esquire
Connolly Gallagher, LLP
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801

Re:   *In the Matter of the Estate of Terrance D. Newton, Sr.*,
      C.A. No. 2022-0898-LM

Dear Counsel:

This case deals with the administration of the estate of a decedent who passed away following a motorcycle accident. The decedent's wife has been serving as administratrix of his estate and his children are bringing claims against her, seeking her removal, and claiming she breached her fiduciary duties. For reasons set forth below, I find that in the course of her administration, to this point, the administratrix has not neglected her duties, nor has she breached her fiduciary duties.

This is my final report.

## I.    BACKGROUND[1]

This case arises from the management of the estate of Terrance D. Newton, Sr. (the "Decedent").  The Decedent passed away on March 21, 2022, due to a motorcycle accident.[2]  The Decedent is survived by his wife, Paula T. Dumpson (the "Respondent"), and three adult children who are not children of the Respondent: Terrance D. Newton, Jr., Troy A. Newton (together with Terrance, Jr., the "Petitioners"), and Torian Newton.

The Respondent filed a petition for letters of administration on April 14, 2022 with the Register of Wills for New Castle County.[3]  As part of her role as administratrix, the Respondent filed an inventory of the Decedent's estate (the "Inventory") on June 23, 2022.[4]  The Respondent also personally filed a demand for

---

[1] The facts in this report reflect my findings based on the record developed at an evidentiary hearing on February 21, 2022.  *See* Docket Items ("D.I.") 119-120.  I grant the evidence the weight and credibility I find it deserves.  Citations to the trial transcripts are in the form "Tr. #." D.I. 119-120. The parties' jointly submitted exhibits are cited as "JX--".

[2] Tr. 20:7-9; Tr. 52:10-15.

[3] *See In re Newton*, 180747 NK ("ROW"), D.I. 1; *Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018) (citing 12 *Del. C.* § 2501; D.R.E. 202(d)(1)(C)) ("Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice.").

[4] ROW D.I. 9.

a surviving spousal allowance.[5] The Register of Wills granted the spousal allowance through an Order dated June 21, 2022.[6]

On the inventory filed with the Register of Wills, the Respondent listed one piece of real property, a residence located at 503 Frank Orchards Lane, in New Castle, Delaware.[7] In their petition, the Petitioners claimed that the Decedent also held an equitable interest in real property at 303 W. 32nd Street, in Wilmington, Delaware (the "32nd Steet Property").[8] At the hearing, the Respondent testified that she was aware of the Decedent's involvement with other properties during his life, and that prior to his death she believed the Decedent owned the 32nd Street Property.[9] The Respondent testified that the Decedent was paying the mortgage on the 32nd Street Property and rented out the 32nd Street Property.[10] After the Decedent passed, the Respondent discovered that the 32nd Street Property was not titled in the Decedent's name, but rather in the name of the Decedent's aunt, Sharon Smith.[11]

---

[5] ROW D.I. 7.

[6] ROW D.I. 8.

[7] ROW D.I. 9.

[8] D.I. 1, ¶ 10.

[9] Tr. 24:7-24.

[10] Tr. 25:9-24.

[11] Tr. 26:18-27:7.

The Respondent informed her former counsel of this discovery, but did not take any further action regarding the 32nd Street Property.[12]

The New Castle County parcel records show that Ms. Smith became the owner of the 32nd Street Property by a deed dated April 17, 2003.[13] At the hearing, Ms. Smith confirmed that she was the record owner of the 32nd Street Property and testified that the Decedent did not make any payments to purchase the 32nd Street Property.[14] Ms. Smith also testified that the Decedent used the 32nd Street Property as a boarding house and some of his renters damaged the house.[15]

The Respondent testified that she was aware the Decedent paid Matthew Minor for contractor work done on the 32nd Street Property.[16] Ms. Smith testified that the Decedent paid for the repairs because of the damage caused by his tenants.[17] The Decedent's paid Mr. Minor a total of $52,000.00 for his work.[18] Mr. Minor also filed a claim against the Decedent's estate for an additional $27,000.00 for the work

---

[12] Tr. 36:5-8.

[13] PX 7.

[14] Tr: 85:23-86:5; Tr. 90:23-91:2.

[15] Tr. 100:22-101:3

[16] Tr. 31:3-17.

[17] Tr. 100:22-101:6.

[18] Tr. 32:1-5.

done at the 32nd Street Property. Respondent testified when she reached out to Mr. Minor, he reported he was already paid the additional $27,000.00.[19] This was confirmed by Ms. Smith, who testified that she paid Mr. Minor from the proceeds of the sale.[20]

At the evidentiary hearing, the Petitioners presented a purported realty transfer tax return (the "Transfer Form"), claiming to transfer the 32nd Street Property from Ms. Smith to the Decedent.[21] The Transfer Form contains several oddities. The date of real estate conveyance on the Transfer Form is December 21, 2006, but the Transfer Form was not notarized until January 15, 2022.[22] The Transfer Form also lists the conveyance as a "transfer from mother to son" although Ms. Smith was the Decedent's aunt, not his mother.[23]

Ms. Smith testified that she sold the 32nd Property to Tasha Jones on September 26, 2022.[24] The Respondent testified that she was unaware the 32nd Street

---

[19] Tr. 32:6-18.

[20] Tr. 94:11-18.

[21] PX 6.

[22] PX 6.

[23] PX 6.

[24] PX 7.

Property was up for sale until after it was sold.[25] The Respondent also testified that the Decedent's estate did not receive any proceeds from the sale, because Ms. Smith was the owner of the Property.[26]

The Inventory also identified four vehicles owned by the Decedent when he passed.[27] The Respondent testified that the first vehicle, a 2017 BMW i8, was sold back to the dealership, and a check for the proceeds was deposited into the estate account.[28] The second vehicle, a 2020 Coachmen, was repossessed by the lender.[29] The third vehicle, a 2020 Harley-Davidson, was totaled during the accident that caused the Decedent's death, and a $15,000.00 insurance payment was deposited into the estate account.[30] The fourth and final vehicle, a 2014 Chevrolet Impala, remains parked at 503 Frank Orchards Lane.[31]

At the hearing, the Respondent testified that she received a check from the estate account for $32,153.00.[32] The Respondent testified that she paid for the

---

[25] Tr. 33:14-15.

[26] Tr. 33:8-15.

[27] ROW D.I. 9.

[28] Tr. 50:9-13.

[29] Tr. 51:18-52:9.

[30] Tr. 52:10-21.

[31] Tr. 53:10-20.

[32] Tr. 76:8-12.

Decedent's funeral expenses directly and this check represents that she later reimbursed herself from the estate, although she did not file a claim against the estate for the expenses.[33]  The Respondent also testified that she has continued to make mortgage payments on the Decedent's property from the estate account since the Decedent's death.[34]

The Respondent has not yet filed the first annual accounting for the Decedent's estate. At the time of the hearing, the accounting was due in April of 2023. However, on March 29, 2023, the Respondent filed a request for a 90 day extension to file the first and final accounting of the Decedent's estate, which extended her deadline to July 21, 2023.[35]

## II.    ANALYSIS

The Petitioners bring multiple claims against the Respondent, all arising from her role as administratrix.  First, they claim the Respondent should be removed for neglect of her duties.  Second, they claim the Respondent breached the fiduciary duties she owes to the estate.  Third, they request an accounting from the

---

[33] Tr. 76:8-23.

[34] 76:24-77:10.

[35] ROW D.I. 15.

Respondent, detailing the actions she has taken as administratrix. I address each of these claims in order.

### A. The Respondent should not be removed for neglect of her duties.

The Respondent has not neglected her duties as administratrix of the Decedent's estate. Under 12 *Del.C.* § 1541(a), the Court may remove an administrator of an estate if they neglect their official duties. "This statute is often invoked when administrators fail to file timely inventories and accountings as required by the Register of Wills."[36] Under 12 *Del.C.* § 1905(a), the administrator has 3 months from the grant of letters to submit an inventory of the decedent's estate. Under 12 *Del.C.* § 2301(a), the administrator must file an annual accounting each year that the decedent's estate remains open.

The Respondent filed an inventory within the 3-month period, as required by the statute. Due to the 90-day extension granted to the Respondent, the first accounting is not yet due at the time of this report. As such, I find that the Respondent has missed no official deadlines that would justify her removal for neglect of her duties.

---

[36] *Murowany v. Hidell*, 2021 WL 4060303, at *3 (Del. Ch. May 4, 2021).

Although the Petitioners argue that the Respondent neglected her duties by failing to pursue a claim for proceeds from the sale of the 32nd Street Property on behalf of the estate, Petitioner's failed to prove this argument at the hearing. Testimony offered at the hearing shows that the Respondent diligently went to the recorder of deeds and discovered the Decedent was not the owner of the 32nd Street Property. She raised the issue with her counsel at the time and decided not to move forward since the Decedent was not the legal owner. Moreover, the Respondent still has the opportunity to pursue such a claim, if she finds that it would be appropriate. As such, it is premature to claim that she has neglected her duty to pursue claims on behalf of the estate. Because the Petitioners have failed to prove any neglect of duties to this point, I find that the Respondent should not be removed for neglect of duties.

**B.      The Respondent has not breached her fiduciary duties to the estate.**

Estate administrators owe both a duty of care and a duty of loyalty to the estate. The Petitioners argue that the Respondent breached both of these duties in her time as administratrix. I address each of these claims in order and find the Respondent did not breach any of the fiduciary duties she owed to the estate.

### 1.     The Respondent did not breach her duty of care.

When assessing whether an administrator has breached their duty of care, they are held to a standard of "ordinary care, prudence, skill and diligence[.]"[37] Regarding the duty of loyalty, "the administrator 'shall not act for himself in any matter with respect to which he has duties to perform or interests to protect for another.'"[38]

The Petitioners argue that the Respondent breached her duty of care by not bringing a claim for proceeds from the sale of the 32nd Street Property. As discussed above, the Respondent still has the opportunity to investigate and bring such a claim. It would be premature to find that she has breached her duty of care in this way. Moreover, the testimony of Respondent shows she did some investigation into the 32nd Street Property and provided information on the property to her counsel.

### 2.  The Respondent did not breach her duty of loyalty.

Among the tasks before an administrator is the payment of claims against the decedent. 12 *Del.C.* § 2105(a) provides the order for the payment of claims and

---

[37] *Del. Trust Co. v. McCune*, 80 A.2d 507, 511 (Del. Ch. May 3, 1951).

[38] *Thomas & Agnes Carvel Found. v. Carvel*, 2008 WL 4482703, at *10 (Del. Ch. Sept. 30, 2008) (citations omitted).

specifies that the first claim to be paid is the surviving spouse allowance. The second claim to be paid is for the decedent's funeral expenses.

The Petitioners also argue that the Respondent breached her duty of loyalty by only paying out her personal claims from the estate account. This argument is flawed, however, considering the order claims against the estate are to be paid. According to 12 *Del.C.* § 2105(a), the first claim to be paid is the surviving spouse's allowance, which the Respondent did pay. The second claim to be paid is the Decedent's funeral expenses. Again, the Respondent made this payment. The Respondent's role as administratrix does not prevent her from paying these claims which are owed to her. As such, I find that the Respondent has not breached any of her fiduciary duties as the administratrix of the Decedent's estate.

## C. The Respondent should not be required to file an additional accounting.

Under 12 *Del.C.* § 2301(a), the administrator must file an annual accounting each year that the decedent's estate remains open. The Respondent has already requested an extension to allow her to file the first accounting by July 21, 2023. Again, the Petitioners' request is premature, as the Respondent will be filing an accounting shortly. At that point, the Petitioners will have the opportunity to file

exceptions to that accounting. As such, the Petitioners request for an accounting should be denied.

## III. CONCLUSION

For the above reasons, I find that the Petitioners' claims should be denied. The Petitioners failed to show any neglect of duties that would justify the Respondent's removal, failed to show any breach of fiduciary duties by the Respondent, and are premature in their request for an accounting.

This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Loren Mitchell*

Master in Chancery